UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
                                    )
UNITED STATES OF AMERICA,           )
                                    )
          Plaintiff,                )
                                    )  Criminal Action
v.                                  )  No. 05-10304-GAO-6
                                    )
JULIO CARTAGENA,                    )
                                    )
          Defendant.                )
                                    )
```

BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE

<u>PLEA HEARING</u>

John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts  02210
Monday, January 7, 2008
10:55 a.m.

Marcia G. Patrisso, RPR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
One Courthouse Way, Room 3510
Boston, Massachusetts  02210
(617) 737-8728

Mechanical Steno - Computer-Aided Transcript

1  APPEARANCES:

2

3      OFFICE OF THE UNITED STATES ATTORNEY
       By: Neil J. Gallagher, Jr., Assistant U.S. Attorney
       John Joseph Moakley Federal Courthouse
4      One Courthouse Way
       Boston, Massachusetts  02210
5      On Behalf of the Government

6      ROSE, CHINITZ & ROSE
       By: Alan D. Rose, Sr., Esq.
7      29 Commonwealth Avenue
       Boston, Massachusetts  02116
8      On Behalf of the Defendant

9

   ALSO PRESENT:  Deborah Huacuja, Interpreter
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2          THE CLERK:  All rise.  This is the United States
 3  District Court for the District of Massachusetts.  Court
 4  is now in session.  Please be seated.
 5          For a change of plea in the case of Julio
 6  Cartagena, which is Docket 05-10304.  Will counsel
 7  please identify yourselves for the record.
 8          MR. GALLAGHER:  Neil Gallagher for the United
 9  States, your Honor.
10          MR. ROSE:  Good morning, your Honor.  Alan Rose
11  for the defendant, Julio Cartagena, also known as Jose
12  Mejia.
13          THE CLERK:  Madam interpreter, please raise your
14  right hand.
15          (The interpreter is sworn.)
16          THE CLERK:  Please state your name and spell
17  your last name for the record.
18          THE INTERPRETER:  My name is Deborah Huacuja,
19  H-U-A-C-U-J-A.  And the defendant has asked me to be on
20  standby in case he doesn't understand something.  So
21  otherwise he doesn't require me.
22          THE COURT:  Thank you.
23          I understand the defendant proposes to enter a
24  conditional plea to Counts 3, 4 and 8.
25          MR. ROSE:  That is correct, your Honor.
```

1          THE COURT:  And the conditional plea is

2     acceptable to the government?

3          MR. GALLAGHER:  Yes, your Honor.

4          THE COURT:  Otherwise, there is no written plea

5     agreement?

6          MR. ROSE:  That is correct, your Honor; however,

7     I have had discussions with Mr. Gallagher, and I do

8     think it would be appropriate to put on the record what

9     our understanding is.

10          Would it be appropriate to do that at this time?

11          THE COURT:  Well, yeah, just so I know.  I guess

12     maybe I'll go back over it when I'm inquiring, but...

13          Yeah, go ahead.

14          MR. ROSE:  My understanding, your Honor, is

15     that -- the understanding, if you will, is as to the

16     position that the government will take with regard to

17     the guidelines.  Specifically, the government will

18     contend that the Sentencing Guidelines call for the

19     following calculations:  three to 10 kilos of heroin,

20     which would be Level 34; the government will also

21     contend that as to the role in the offense, an extra

22     three levels for leadership; and as to money laundering,

23     an additional two levels; and then three levels off for

24     acceptance of responsibility, for a total offense level

25     of 36, the sentencing guideline range for which would be

 1    188 months to 235 months.

 2          And if the criminal history category reveals

 3    that he is in Category 1, and therefore we're talking

 4    about a range of 188 to 235 months, my understanding is

 5    the government will recommend the low end of the

 6    guideline range, or 188 months.

 7          Our understanding also is that we will be -- the

 8    defense will be free to argue for lower calculations as

 9    to the drug -- as to the drug quantity role in the

10    offense and as to anything else.

11          THE COURT:  So in other words, the commitment

12    from the government is, in practical terms, they won't

13    go higher than what you've recited as their position?

14          MR. GALLAGHER:  That's correct.  Everything is

15    correct.  I would just add that there is the ten-year

16    minimum mandatory.  The defendant, I believe, is

17    admitting to one kilogram as to Count 3, but that's the

18    only --

19          THE COURT:  Of heroin?

20          MR. GALLAGHER:  Of heroin; yes.

21          MR. ROSE:  Your Honor, the defendant is not

22    pleading as to -- as to any particular weight of drugs.

23          THE COURT:  Well, this is the problem:  Count 3

24    alleges a weight.

25          MR. ROSE:  I understand that, your Honor.  But

1    he's not proposing to plead guilty as to any particular

2    weight.

3            THE COURT:  And is that with the agreement of

4    the government?

5            MR. GALLAGHER:  That's sort of a little

6    curveball.  It's been our position he's responsible for

7    between three and ten.  The fact is that it's not an

8    element of the offense so he's not required to even

9    plead to it, but I would make the record clear that

10   we're going to be seeking a ten-year minimum mandatory

11   sentence, and that if the Court finds by a preponderance

12   of the evidence that that's appropriate, a ten-year

13   minimum mandatory sentence, and that the statutory

14   maximum be life, even though he's not admitting that.

15   And that admission will not be used as a basis for that;

16   instead, it will be the Court's findings as to those

17   facts.

18           MR. ROSE:  Your Honor, I fully understand what

19   the government's position is as to weight.  All I'm

20   saying is that my client's not pleading as to any

21   particular weight but as to the fact of heroin.  And I

22   should also add, your Honor, that he is pleading as to

23   heroin but not as to cocaine or cocaine base.  But I

24   believe that's irrelevant for purposes of this morning.

25           THE COURT:  Okay.  All right.  Then would you

1    inquire?  And as to Count 3, you can omit any

2    allegations as to the weight.

3            THE CLERK:  Okay.  Mr. Julio Cartagena.

4            THE DEFENDANT:  Yes, sir.

5            THE CLERK:  Please raise your right hand.

6                    JULIO CARTAGENA, sworn

7            THE CLERK:  On Criminal No. 05-10304, you have

8    previously pled not guilty to Counts 3, 4 and 8 of the

9    second superseding indictment.  Do you now wish to

10   change your plea as to those counts?

11           THE DEFENDANT:  Yes, sir.

12           THE CLERK:  With respect to Count 3 charging 21

13   U.S.C. 846, conspiracy to distribute heroin, from a time

14   unknown to the grand jury but at least by in or about

15   sometime in 2001 and continuing to on or about November

16   30, 2005, in Everett, Medford, Charlestown, Malden,

17   Lynn, Revere, Boston and elsewhere in the District of

18   Massachusetts, in the state of New York, the state of

19   Florida and elsewhere, Luis Alberto Lopez; Jose A.

20   Mejia, a/k/a Julio Cartagena; Alexander Serna; Pablo

21   Baez; Alberto Benval; Leslihe A. Abad; Tirso Ciriaco;

22   Sixto Rivera; Victor Vega; Daurin Arias; Felix Ramirez;

23   Richard Duran, defendants herein, did knowingly and

24   intentionally combine, conspire, confederate and agree

25   with others known and unknown to the grand jury to

1  distribute a controlled substance, to wit, heroin, a

2  Schedule I controlled substance, all in violation of

3  Title 21, United States Code, Section 846.

4        With respect to Count 3 of the second

5  superseding indictment, how do you plead, sir, guilty or

6  not guilty?

7        THE DEFENDANT:  Guilty, sir.

8        THE COURT:  Let me just interrupt there.  This

9  would cap -- just so everybody's clear, this would cap

10  the maximum at 20 years, I think, under *Apprendi*.

11        MR. GALLAGHER:  Well, I think the government's

12  going to be stuck with that and -- you know.

13        THE COURT:  I just want to -- I didn't want

14  there to be any misunderstanding, because I think

15  something you had said earlier about the range, it's

16  true that the bottom end of the range can be established

17  by a preponderance of the evidence, but the

18  otherwise-applicable maximum would have to be proved to

19  the jury or admitted by the defendant, the quantity, to

20  raise it.  So I just point out that I think it's capped

21  at 20.

22        MR. GALLAGHER:  The fact is we're not going

23  beyond 20, so it's not --

24        THE COURT:  Okay.  I just wanted to flag it.  If

25  it's not an issue, that's fine.

1          THE CLERK:  With respect to Count 4, Title 21,

2     United States Code, Section 856(a)(1), maintaining a

3     place for drug purposes, and Title 18, United States

4     Code, Section 2, aiding and abetting, from in or about

5     September 2005 and continuing until on or about November

6     30, 2005, at Everett and elsewhere in the District of

7     Massachusetts, Jose A. Mejia, a/k/a Julio Cartagena, and

8     Alberto Benval, defendants herein, did knowingly and

9     intentionally use and maintain a place, to wit, 15

10    Staples Avenue, Apartment No. 11, Everett,

11    Massachusetts, for the purpose of manufacturing and

12    distributing controlled substances, specifically,

13    heroin, all in violation of Title 21, United States

14    Code, Section 856(a)(1) and Title 18, United States

15    Code, Section 2.

16         With respect to Count 4, how do you now plead,

17    guilty or not guilty?

18         THE DEFENDANT:  Guilty, sir.

19         THE CLERK:  And with respect to Count 8 of the

20    second superseding indictment which charges 18, United

21    States Code, Section 1956(h), money laundering and

22    conspiracy, from an unknown date but at least by in or

23    about July 2004 and continuing until in or about

24    November 2005 at Charlestown, Andover and Chelsea in the

25    District of Massachusetts and elsewhere, Jose A. Mejia,

1    a/k/a Julio Cartagena, and Alberto Benval, defendants

2    herein, knowing that the property involved represented

3    the proceeds of some form of unlawful activity, did

4    knowingly and intentionally combine, conspire,

5    confederate and agree with each other and other

6    individuals known and unknown to the grand jury to

7    conduct and attempt to conduct financial transactions

8    affecting interstate commerce which, in fact, involved

9    the proceeds of a specified unlawful activity, that is,

10   the distribution of heroin, in violation of Title 21,

11   United States Code, Section 841(a)(1), with the intent

12   to promote the carrying on of said specified unlawful

13   activity; and, two, knowing that the transactions were

14   designed, in whole or in part, to conceal and disguise

15   the nature, the location, the source, the ownership and

16   the control of the proceeds of said specified unlawful

17   activity in violation of Title 18, United States Code,

18   Section 1956(a)(1), all in violation of Title 18, United

19   States Code, Section 1956(h).

20           With respect to Count 8 of the second

21   superseding indictment, how do you now wish to plead,

22   guilty or not guilty?

23           THE DEFENDANT:  Guilty, sir.

24           THE COURT:  I'm going to ask you some questions

25   now about your decision to plead guilty.

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  If you don't understand any of the

3     questions I ask you, let me know and I'll try to make

4     them clearer.

5          THE DEFENDANT:  All right.

6          THE COURT:  I don't want you to try to answer a

7     question if you're not sure what it is I'm asking you,

8     and if that should be the case, let me know and we'll

9     correct it right away.

10         THE DEFENDANT:  All right.

11         THE COURT:  And similarly, if at any time you

12    want to have the assistance of Ms. Huacuja with respect

13    to translation, let us know that and we'll be able to

14    pause and let that occur, okay?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  Would you state for the record your

17    full true name.

18         THE DEFENDANT:  Jose Mejia, sir.

19         THE COURT:  And you're also known as Julio

20    Cartagena?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  But your true name is Jose Mejia?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  What is your date of birth?

25         THE DEFENDANT:  December 31, 1965 *[sic]*.

1           THE COURT:  Where were you born?

2           THE DEFENDANT:  Dominican Republic.

3           THE COURT:  Are you a United States citizen?

4           THE DEFENDANT:  No, sir.

5           THE COURT:  What's the highest level of formal

6    education you've completed?

7           THE DEFENDANT:  Ninth grade.

8           THE COURT:  And in the Dominican?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  Are you able to read and write in

11   English?

12          THE DEFENDANT:  I'm able to read, not able to

13   write.

14          THE COURT:  Okay.  Have you ever been treated

15   for any mental illness or disturbance, or are you

16   currently suffering from any that you're aware of?

17          THE DEFENDANT:  No, sir.

18          THE COURT:  Today have you taken any medications

19   of any kind that might affect your clear-headedness or

20   your ability to understand what's going on?

21          THE DEFENDANT:  No, sir.

22          THE COURT:  Now, you're offering to plead guilty

23   to three counts of this second superseding indictment.

24   Each count alleges your participation in a separate

25   crime under the drug laws of the United States.  And let

1    me review for you what the potential penalties are you

2    face on your conviction of these three charges, which

3    conviction will occur if I accept your plea.

4              THE DEFENDANT:  Okay, sir.

5              THE COURT:  With respect to Count 3, you're

6    agreeing -- you're offering to plead guilty to the crime

7    of conspiring with others to distribute heroin.  If

8    you're convicted of that offense the range of penalties

9    can vary, to some degree, depending on a determination

10   at sentencing as to what quantity or amount of heroin

11   you were involved in with respect to the conspiracy that

12   you're acknowledging here.

13             So while the maximum term of imprisonment could

14   be not more than 20 years, the minimum term might vary

15   depending upon what the government may or may not

16   establish as to a quantity.  I understand it to be the

17   government's position that it will seek to establish in

18   excess of three kilograms of heroin being involved --

19   actually, the relevant breakpoint is one kilogram.  If

20   the government is able to establish by a preponderance

21   of the evidence at sentencing that you were involved --

22   your participation involved -- the distribution or the

23   conspiracy to distribute more than one kilogram, then

24   the minimum mandatory sentence will be ten years.  So

25   then in that case the range of sentence of imprisonment

1  would be between ten and twenty years.

2         If the government does not establish more than a

3  kilogram but does establish more than 100 grams of

4  heroin, then there is another mandatory minimum of five

5  years that could be applicable, in which case the range

6  would be five to twenty.  And if the government is

7  unable to establish any particular amount, or that the

8  amount is less than 100, then the bottom end would be

9  potentially no imprisonment up to 20 years in prison as

10  a matter of the statute.

11         Do you understand that?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  Okay.  And similarly, the amount of

14  a monetary fine could vary.  Actually, no, I guess not,

15  because that would be fixed by the maximum -- that would

16  be an *Apprendi* issue.  So what is it, one million under

17  zero to twenty?

18         MR. GALLAGHER:  One million.

19         THE COURT:  So the fine could be up to a million

20  dollars.  There's no minimum fine that could be imposed.

21         And then there could be a period of supervised

22  release after you've completed any prison term.

23  Supervised release means you're released from prison but

24  you're under the supervision of the probation office.

25  There could be restrictions on what you may or may not

1  do during that period of time.  So a person who's on

2  supervised release is not as free as a person who is

3  under no criminal sentence would be.  There also can be

4  responsibilities and obligations such as providing

5  information to the probation officer, participating in

6  programs of one sort or another, perhaps undergoing drug

7  testing, things like that.  And I think we're under the

8  20-year supervised release period, so it would be up to

9  five years of supervised release.

10        MR. GALLAGHER:  Count 3 would be three to five;

11  a minimum of three, a maximum of five.

12        THE COURT:  The minimum might depend on

13  what was -- it could be a minimum of five and a maximum

14  of five.  That's right.  The effective range could be

15  between three and five years of supervised release.

16        There's also a special assessment of $100 on any

17  conviction regardless of what the other sentences are.

18  So that's what you face potentially as punishment for

19  Count 3.

20        Do you understand all those variables?

21        THE DEFENDANT:  Yes, sir.  Yes, your Honor, I

22  understand.

23        THE COURT:  Okay.  Now, as to Count 4, which

24  charges you with maintaining a place for drug purposes,

25  the range of penalty is a little more simple:  It's

1    potential imprisonment up to 20 years, a monetary fine

2    of up to $500,000, and supervised release, I guess, up

3    to five years.

4           MR. GALLAGHER:  I think it's up to three years,

5    your Honor.

6           THE COURT:  Three years.  It might be up to

7    three years.  And then a special assessment of $100,

8    okay?

9           Do you understand that?

10          THE DEFENDANT:  I understand that, sir.

11          THE COURT:  And actually, pretty similar on the

12   money-laundering conspiracy.  Again, up to 20 years,

13   potentially with no minimum mandatory sentence; a fine

14   of up to $500,000, or twice the amount of the funds that

15   may have been involved if the government is able to

16   establish a particular amount.  The fine can vary:  It's

17   either a set amount up to 500,000 or it can be as high

18   as twice the amount.  So if $300,000 was involved, the

19   fine could be $600,000, okay?

20          Again, supervised release would probably be

21   three years on that.  And $100 assessment.

22          So you understand that range as to that count?

23          THE DEFENDANT:  Yes, sir.

24          THE COURT:  Okay.  Those are the ranges of

25   criminal penalties that can be imposed.  There is, in

1    addition, a practical consequence for a non-citizen who

2    is convicted of drug offenses such as these, and that is

3    that the law permits, and it is probably highly likely,

4    that you will be deported from the United States as a

5    consequence of the convictions after you've completed

6    any criminal sentence.

7            Do you understand that?

8            THE DEFENDANT:  Yes, your Honor.

9            THE COURT:  Now, as a person facing charges that

10   carry such substantial penalties and consequences, you

11   have some important rights that you give up by pleading

12   guilty.  One of the most important rights you have is

13   the right to have a trial by a jury to determine whether

14   you're guilty or not of what the government charges you

15   with in these three counts.

16           In a jury trial there would be 12 people who

17   would be the jury.  They would be selected from a pool

18   of potential jurors who would be summoned to the

19   courthouse to be available for jury service.  Those

20   people in the pool are selected by a random process from

21   citizens who live in the eastern part of Massachusetts,

22   and from that pool, then, an actual trial jury would be

23   selected here in the courtroom in a process in which you

24   and your lawyer, as well as the government lawyers,

25   would take part.

1          Once the jury had been selected, the government

2     would be required to go forward with its case and

3     present evidence in support of the charges that are made

4     against you.  In the course of the trial you would have

5     the opportunity to challenge or contest the government's

6     evidence in various ways under the Rules of Evidence and

7     otherwise; you'd have the right to present evidence of

8     your own that might tend to show you were not guilty or

9     might simply raise questions about or cast doubt on the

10    government's evidence against you; you'd have the right

11    to have any witness against you appear in the courtroom

12    where that person would be testifying here before the

13    jury, and you could cross-examine or question the

14    witness about the testimony.

15          After all the evidence had been presented the

16    jurors would be asked to decide whether on the evidence

17    the government had convinced them that you had committed

18    the offenses you're charged with.  The jurors would be

19    told that they could find you guilty only if they were

20    convinced of your guilt of each respective charge beyond

21    a reasonable doubt, and that if they had a reasonable

22    doubt about whether you were guilty or not, you would be

23    entitled to the benefit of that doubt and they would be

24    required to find you not guilty.  The verdict would have

25    to be unanimous; all 12 would have to agree as to any

1  count that you were guilty beyond a reasonable doubt in

2  order to find you guilty; otherwise, you would be

3  entitled to an acquittal.

4       The jurors would be told to make a separate

5  judgment about each of the counts.  So you're charged

6  with three counts.  They might make the same decision on

7  all three but they would not have to, depending on how

8  they viewed the evidence.  So you'd have a jury trial --

9  you'd have the right to have a jury trial along those

10  lines, but by pleading guilty you're giving up that

11  right.

12       Do you understand that?

13       THE DEFENDANT:  Yes, your Honor.

14       THE COURT:  You also have the right not to

15  incriminate yourself or to testify against yourself in

16  any way; and in effect, by pleading guilty you're doing

17  both:  You're testifying in a way, but importantly, the

18  plea of guilty that you're offering is an incriminating

19  statement, so you're incriminating yourself by pleading

20  guilty.  So that's another right you have under our

21  Constitution that you're choosing to give up.

22       Do you understand that?

23       THE DEFENDANT:  Yes, your Honor.

24       THE COURT:  Now, there is no written plea

25  agreement.  Mr. Rose summarized some, I guess,

1    representations that the government has made about how

2    the Sentencing Guidelines might be calculated.  And I

3    gather you're taking that into account, those

4    representations, in deciding to plead guilty, are you?

5            THE DEFENDANT:  I'm sorry, sir.  Say that again?

6            THE COURT:  Well, before I began my asking you

7    questions, Mr. Rose at the beginning had summarized that

8    the government had agreed to take certain positions with

9    respect to the Sentencing Guidelines.  And my question

10   is:  Are you relying on those representations in

11   deciding to plead guilty?

12           MR. ROSE:  Yes.

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  Okay.  Any others, I guess, is my

15   next question -- other than what Mr. Rose summarized,

16   which were positions about how the guidelines might

17   work, are you relying on any other promises or

18   assurances by the government in deciding to plead guilty

19   either to do something or not to do something?

20           MR. ROSE:  There was a representation by

21   Mr. Gallagher to me that the government doesn't take any

22   position with regard to Mr. Mejia's criminal history

23   category.

24           Have I fairly stated that?

25           MR. GALLAGHER:  That's correct, your Honor.

1          THE COURT:  Okay.  Anything else, then, or is

2     that it?  I just want to know whether there are any

3     other promises that you think -- you've been made.

4     Anybody else promise you anything that you think is --

5          THE DEFENDANT:  No.

6          THE COURT:  -- significant to you as you decide

7     whether to plead guilty or not?

8          THE DEFENDANT:  No, your Honor.

9          THE COURT:  Now, reference was just made to the

10    Sentencing Guidelines.  Let me back up for a minute.  If

11    I find you guilty on the basis of your plea today, we'll

12    continue the matter for sentencing to sometime in the

13    future, probably about three months from now.  Between

14    now and then the probation office will conduct an

15    investigation -- presentence investigation -- and write

16    a presentence report which will be provided to me to

17    help me make the decision as to what sentence to impose.

18          You and your lawyer -- actually, the

19    government's lawyers -- will see a draft of the report

20    before I see it, and they'll have an opportunity to

21    comment on it.  Ultimately I'll see it and I'll take

22    that into account.  It will be information that I will

23    use in deciding on the sentence.

24          One of the things that the presentence report

25    will include will be a calculation of how the Sentencing

1    Guidelines should apply in your case, and then what

2    recommendation the guidelines would make as to a range

3    of sentence.  The guidelines generally make a

4    recommendation about a range of sentence that is

5    somewhere within what's permitted by the statutes but is

6    usually somewhat more focused.  And so, for example, if

7    the range of sentence could be anywhere from zero years

8    up to 20 years, the guidelines will have a proposal

9    somewhere within there, a somewhat more narrow range.

10   And that will be something that I will take account of

11   although I'm not bound to follow; in other words, if the

12   guidelines make a recommendation which I should give

13   consideration to -- and I will.  Whether I end up

14   following that recommendation, we'll have to determine

15   at the appropriate time.  It's not binding on me, is

16   what I want -- you to understand that.

17          So let me just ask in general:  Have you talked

18   about the Sentencing Guidelines -- and how they work in

19   general and how they might work in your case -- with Mr.

20   Rose?  Have you had an opportunity to do that?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  You feel you've had a full

23   opportunity to explore the possibilities in practical

24   terms, as well as strictly legal terms, of how the

25   guidelines might operate in your case?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Okay.  Now, because I have not seen

3    the information that I will ultimately have and use in

4    deciding on a sentence, it's not possible for me today

5    to predict for you what the sentence is likely to be.

6    And as a result, as you plead guilty you don't know --

7    because I don't know -- what the sentence is going to

8    be.  So there is some uncertainty.  It may be that

9    whatever thinking you've done about it, and what you --

10   if you think you have an idea where it might end up, you

11   may be right.  The sentence might be in that range.  It

12   may be that you're wrong and it's something else.

13          If it should be different from what you expect

14   and you're at that time disappointed and unhappy about

15   that, you may have some remedies with respect to any

16   legal errors that I might make in making sentencing

17   judgments, but the one thing you won't be able to do is

18   go back to being not guilty.  In other words, if the

19   sentence is something that you're not satisfied with,

20   you may have some remedies directly with respect to the

21   sentencing, but you will not be permitted to withdraw

22   your plea of guilty to these offenses and go back to

23   being not guilty.  Is that clear?

24          THE DEFENDANT:  I understand.  Yes, sir.

25          THE COURT:  Okay.  Let me ask you, by the way --

1    there was also a forfeiture count.  Is there specific

2    property of Mr. Mejia that the government would -- that

3    is, first of all, I guess, identified in that count; and

4    secondly, the government would be seeking to proceed

5    against?

6           MR. GALLAGHER:  Your Honor, I believe there is.

7    And I apologize, I just need to make sure -- if I can

8    ask the clerk for a copy of Mr. Mejia's indictment so I

9    could just make sure.

10          There were several vehicles including a --

11   actually, no, your Honor, there's not.

12          THE COURT:  No?

13          MR. ROSE:  I didn't think so.

14          THE COURT:  Okay.

15          MR. GALLAGHER:  There is also, I should say, a

16   money-laundering allegation in addition to the drug

17   allegation, and that there is a possibility for a money

18   judgment based upon the laundering proceeds, but at this

19   time we haven't identified any particular asset, real

20   property that the government intends to seek to have

21   forfeited.  So in other words, if the government --

22   between now and sentencing, the government identifies an

23   asset tied to that money-laundering allegation, the

24   government will be filing appropriate motions along with

25   this copy and identify it.

1          THE COURT:  Okay.  There's no present motion to

2     forfeit any particular property or any sum of money?

3          MR. GALLAGHER:  That's correct.

4          THE COURT:  All right.  So we'll just leave it

5     to develop, if it does.

6          I guess the only thing I want to be sure Mr.

7     Mejia understands is that there is some possibility that

8     in addition to the criminal penalties, if the government

9     establishes certain things you may be required to

10    forfeit some property, including cash, to the

11    government.  That's subject to further proceedings.

12         MR. ROSE:  May I just have a moment, your Honor?

13         THE COURT:  Yeah.

14         (Discussion off the record.)

15         THE COURT:  The government would have to tie --

16    identify particular property and tie it to the offenses,

17    but I guess for present purposes the reason I bring it

18    up is I want you to understand your admission having

19    committed certain crimes is part of what the government

20    would have to prove; that is, the government would have

21    to prove that you had committed the crimes and then tie

22    the property to the crimes.  So today by admitting the

23    crimes you're making it a little bit easier for the

24    government to proceed in forfeiture.

25         Do you understand that?

1           THE DEFENDANT:  Yes, I understand, sir.

2           THE COURT:  All right.  Let me hear from the

3    government, then, on the evidence that would support

4    each of the charges that are made against Mr. Mejia on

5    these counts.

6           MR. GALLAGHER:  Your Honor, the evidence would

7    show that with respect to Count 3 charging distribution

8    of heroin, that beginning in July of 2005 a seizure of

9    approximately 130 grams of heroin was made from Vinicio

10   Mejia in which a confidential informant ordered a

11   quantity of heroin from a person known only at that time

12   as Triste.  It was later learned that Triste was the

13   defendant, Julio Cartagena, who was identified at that

14   time.

15          Thereafter and beginning in September of 2005,

16   the government began a wiretap investigation on phones

17   used by Julio Cartagena and Luis Lopez, and what the

18   wiretap investigation revealed is that the defendant was

19   involved in the distribution of a large quantity of

20   heroin and employed several runners, including Alberto

21   Benval, who's responsible for processing and mixing the

22   heroin and the heroin cut for distribution; a Leslihe

23   Abad and Ernesto Perez who were responsible for

24   distribution -- the actual distribution of the heroin

25   and the drug proceeds from several customers that Mr.

1   Cartagena had including a Sixto Rivera, a Daurin Arias,

2   a person knows as Ciriaco (ph) and a person known as

3   Riraldo.

4          With regards to Count 4 charging maintaining a

5   place, the evidence would show that the defendant, along

6   with Alberto Benval, maintained a heroin-processing mill

7   at Apartment 11 at 15 Staples Avenue, Everett,

8   Massachusetts, in which Alberto Benval was directed by

9   Julio Cartagena to mix heroin into fingers of heroin for

10  the distribution to other individuals; and what the

11  evidence would show is that on November 30th of 2005 a

12  search warrant was executed at that location in which

13  the DEA found approximately 3-1/2 kilograms of heroin

14  and materials consistent with the distribution and the

15  manufacturing of heroin at that location.

16         What the evidence would also show with regards

17  to Count 8 charging conspiracy to money laundering

18  incidents is that the defendant purchased a business

19  which he named Triteza Communication, and represented

20  both to the bank and to accountants that that business

21  was going to be a money-remitter business, and he was

22  going to obtain a license for that business even though

23  he never did, and employed several employees in order to

24  wire money to different locations.

25         During that same time the defendant opened up a

1    bank account at Enterprise Bank & Trust here in

2    Massachusetts, and what the evidence would show is Julio

3    Cartagena received drug money from drug customers which

4    was then deposited into that bank account by several

5    individuals including Alberto Benval, Julio Cartagena

6    and Vinicio Mejia in amounts of cash over a period of a

7    year of about $2 million.

8           The evidence would also show that drug customers

9    would often send money through that wire business,

10   Triteza Communications on Bunker Hill Avenue in

11   Charlestown, and would use the names of people who did

12   not exist and at addresses that did not exist in

13   Everett, Massachusetts, in Malden and elsewhere.  These

14   wire transfers were made to both the Dominican Republic

15   and also to Colombia which, during wiretap

16   conversations, revealed that these wire transfers that

17   were going from Triteza Communications to the area of

18   Pereira, Colombia, was money that was being sent to the

19   source of supply in Colombia, and that was revealed

20   through a wiretap and the phones used by Luis Lopez.

21   Also add to a document, a piece of paper, which actually

22   named the recipients of the drug money in Pereira,

23   Colombia, and those names matched at least several wire

24   transfers, the names of the persons that received the

25   money broken down into $1,000 increments, sort of

1   clusters of transactions over a several-date period.

2           MR. ROSE:  Your Honor, before Mr. Mejia

3   responds, I did note that Mr. Gallagher referred to the

4   execution of a search warrant and the seizure of 3-1/2

5   kilograms of heroin.  That may or may not be the case; I

6   don't know.  In any event, I just want it clear that Mr.

7   Mejia is not pleading to any particular weight.

8           THE COURT:  Understood.

9           MR. GALLAGHER:  I should make one more thing

10  clear, just to be absolutely clear:  When we talked

11  about the government's recommendation for lowering the

12  guidelines, the government is going to recommend the low

13  end of the guidelines, whatever that might be.  For

14  example, if your Honor finds the guideline lower than

15  the government's is, that would be the low end; if the

16  Court finds it higher, that will be the government's

17  recommendation, not 188, but whatever the applicable

18  range is.

19          MR. ROSE:  That's understood, your Honor.

20          THE COURT:  Okay.  Let me go through these --

21  first of all, did you listen to the summary that Mr.

22  Gallagher made of your participation in these events?

23  Did you listen to it?

24          THE DEFENDANT:  I'm sorry, sir?

25          THE COURT:  Did you listen to the summary that

1    Mr. Gallagher gave?

2         THE DEFENDANT:  I listened to it, yeah.

3         THE COURT:  Now, with respect to Count 3 that

4    charges that you conspired with others to distribute

5    heroin, in order to prove you guilty of that the

6    government would have to prove that you knowingly and

7    intentionally entered into an agreement with others to

8    bring about some unlawful objective, in this case the

9    distribution of heroin.  So that you intended to join

10   with others by agreement to do it and that your

11   objective was to intend to distribute heroin.

12        Considering the facts that Mr. Gallagher offered

13   in support of that, is that true?  Did you commit that

14   offense as alleged?

15        THE DEFENDANT:  Yes, your Honor.

16        THE COURT:  As to Count 4, the crime is

17   maintaining a place where -- for the purpose of

18   manufacturing or distributing controlled substances,

19   particularly, heroin, and the allegation is that a

20   particular apartment on Staples Avenue in Everett, you

21   knowingly and intentionally participated in maintaining

22   as a place for either manufacturing or storing or

23   distributing heroin.  And Mr. Gallagher offered some

24   factual support for that that he says would be evidence

25   in the case.

1          Is that also true?  Did you participate in that

2     crime as well?

3          THE DEFENDANT:  Yes, your Honor.

4          THE COURT:  Finally, Count 8 alleges that you

5     participated in money laundering.  Now, money laundering

6     is a little bit of a technical concept in the law but it

7     means that you used the proceeds from some illegal

8     activity, and what is alleged here is the distribution

9     of heroin, the money you get from that, proceeds, and

10    engaged in certain financial transactions which were

11    designed either to conceal the source of the proceeds or

12    to use them to facilitate the continued illegal

13    activity, the results of what we call a jurisdictional

14    element that the transactions affected interstate

15    commerce.

16          The question I now have is:  Did you do that as

17    well?  Did you commit that offense by having committed

18    those elements of the offense?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  So you're pleading guilty to each of

21    these counts because, in fact, you committed the offense

22    charged in each of the counts?

23          THE DEFENDANT:  Yes, your Honor.

24          THE COURT:  Is anyone pressuring you or pushing

25    you to plead guilty when you don't want to do it?

1          THE DEFENDANT:  No, your Honor.

2          THE COURT:  Is your decision to plead guilty

3    your own personal decision?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  Have you understood all the

6    questions I've had here?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Do you have any questions?

9          THE DEFENDANT:  No, sir.

10          THE COURT:  All right.  I find that the plea is

11    voluntary, intelligently offered and that there is a

12    basis in fact for it, and on the basis of the plea I

13    find the defendant guilty of Counts 3, 4 and 8 of the

14    second superseding indictment.

15          THE CLERK:  And we will set sentence down for

16    Tuesday, April 15th, at two o'clock.

17          MR. ROSE:  April 15th at two o'clock?

18          THE CLERK:  At two o'clock; that's correct.

19          THE COURT:  All right.  We'll be in recess.

20          THE CLERK:  All rise.  Court is in recess.

21          (The proceedings adjourned at 11:35 a.m.)

22

23

24

25

1                   C E R T I F I C A T E

2

3          I, Marcia G. Patrisso, RPR, CRR, Official

4    Reporter of the United States District Court, do hereby

5    certify that the foregoing transcript constitutes, to

6    the best of my skill and ability, a true and accurate

7    transcription of my stenotype notes taken in the matter

8    of Criminal Action No. 05-10304-GAO, United States v.

9    Julio Cartagena.

10

11                        /s/ Marcia G. Patrisso
                          MARCIA G. PATRISSO, RPR, CRR
12                        Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25